Argued and submitted February 9, reversed and remanded in part; otherwise
affirmed August 29, 2001

## OREGON STEEL MILLS, INC.,
a Delaware corporation,
*Appellant,*

*v.*

## COOPERS & LYBRAND, LLP,
a Delaware limited liability partnership,
*Respondent.*

9708-06108; A107366

31 P3d 1092

Lynn R. Nakamoto argued the cause for appellant. With her on the briefs were Peter H. Glade, Lisa A. Kaner, David W. Melville and Markowitz, Herbold, Glade & Mehlhaf, P.C.

Evan L. Schwab argued the cause for respondent. With him on the brief were Curt R. Hineline, Rita V. Latsinova and Dorsey & Whitney LLP.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

In this professional malpractice and breach of contract action, the trial court granted two motions by defendant for partial summary judgment that had the collective effect of eliminating both of the principal grounds for damages that plaintiff asserted. Plaintiff appeals from the ensuing final judgment[1] and assigns error to the granting of the two motions. We affirm in part and reverse in part.

Plaintiff is a corporation and defendant is an accounting firm that plaintiff retained for accounting, auditing, and tax matters. In 1994, a subsidiary of plaintiff made a stock sale. Pursuant to defendant's advice, the proceeds of the sale were shown as a gain on plaintiff's financial statements and reports and on defendant's audit reports for plaintiff from 1994 through 1995. Viewing the facts favorably to plaintiff, defendant's advice was incorrect and was given negligently.

In early 1996, plaintiff planned an offering of its own stock and debt. Shortly before the planned registration of the offering with the Securities and Exchange Commission (SEC), defendant discovered the apparent incorrectness of the treatment of the 1994 sale; it refused to permit the use of its audit reports in connection with the planned offering or, in other ways, to provide necessary assistance with the offering unless the SEC approved the treatment of the 1994 proceeds. Thereafter, as explained in plaintiff's opening brief:

> "[T]he SEC determined that the proceeds from the [1994] transaction could not be reported as a gain and required [plaintiff] to restate its 1994 financial statement and redo its prospectus. As a result, the public offering was delayed for over six weeks."

Plaintiff claims in this action that, because of the lower market price and higher interest rates that obtained on the actual offering date, it "lost" approximately $35 million in additional proceeds that it would have received if the offering had taken place on the earlier date. Plaintiff maintains that

---

[1] The judgment was entered after plaintiff withdrew a remaining incidental damage claim.

that loss was reasonably foreseeable to defendant, in that the original offering date was "timed to take advantage of higher than anticipated first quarter earnings" and "favorable market conditions." Plaintiff also seeks approximately $12 million in "tax damages." Its theory is, as described in the trial court's letter opinion:

> "[Plaintiff] concedes that receipt of the proceeds of the 1996 stock offering [was] a non-taxable event to [plaintiff]. In contrast, it asserts that if [plaintiff] ultimately recovers damages for the stock price differential, those damages would be taxable."

■ In moving for summary judgment on the latter claim of damages, defendant asserted, *inter alia*, that any recovery plaintiff might obtain on the basis of the stock and debt price differential would be a nontaxable event under federal law. Relying on *Tribune Pub. Co. v. United States*, 836 F2d 1176 (9th Cir 1988), and other similar authorities, the trial court agreed with defendant and granted its motion. Plaintiff assigns error to that ruling. As we understand the present law, we agree with the trial court, for the reason that it stated and others, that the claim for "tax damages" cannot be pursued in this action, if at all. We therefore reject plaintiff's assignment.

■ ■ Plaintiff also assigns error to the court's grant of defendant's motion for summary judgment on the claim for damages attributable to the difference in the amount plaintiff received for the stock and debt and the amount it would have received at the market price and interest rates that prevailed at the earlier planned time for the offering. Defendant and the trial court relied on the doctrine, derived largely from federal securities law cases, that they label "loss causation." Under that doctrine, a defendant's liability does not extend to losses that are caused by fluctuations in market value other than directly by the defendant's wrongful conduct. *See, e.g.*, *Movitz v. First Nat'l Bank*, 148 F3d 760 (7th Cir 1998), *cert den* 525 US 1094 (1999); *Bastian v. Petren Resources Corp.*, 892 F2d 680 (7th Cir), *cert den* 496 US 906 (1990).

The apparent premise of the doctrine is that the defendant's conduct is not the efficient cause of ancillary losses resulting from fortuitous movement of the market.

However, under the better-reasoned federal cases, the "loss causation" doctrine would not insulate the defendant from damages under circumstances where the defendant's alleged wrongful act "causes some or all of the loss in value" or prevents the plaintiff from entering or departing the market at a planned and foreseeably favorable time. *See, e.g., Trident Inv. Manag., Inc. v. Amoco Oil Co.*, 194 F3d 772, 778 (7th Cir 1999). Hence, a broker who forgets and fails to execute a customer's sell order the day before the bottom falls out of the market would not be insulated under the federal doctrine from recovery by the customer for the losses that the customer sustained as a result of the market drop. In any event, to whatever extent the federal doctrine might differ, it would be inconsistent with Oregon tort law insofar as it would not permit the recovery of damages in situations like the hypothetical one. *See, e.g., Zehr v. Haugen*, 318 Or 647, 871 P2d 1006 (1994). It is unnecessary for us to delineate the extent, if any, that the federal "loss causation" doctrine is duplicated in Oregon law, because the allegations here are to the effect that plaintiff's damage was foreseeably caused by defendant's negligent acts that directly led to plaintiff's inability to enter the market at a planned and more favorable time. Hence, they are cognizable under both the federal doctrine and Oregon law.[2]

---

[2] The loss causation doctrine on which defendant relies is most prominently applied in federal cases involving the fraudulent sale of securities. In such cases, the consequence of the sale is that the buyer owns stock that has a fraudulently inflated value, not that the buyer owns the stock. In that circumstance, the damages that the buyer can recover are the damages that result from owning the *inflated* stock, not the damages that result from owning *the* stock. Losses resulting from fluctuations in the market price for the stock that occur without regard to the fraud are losses that result from owning *the* stock rather than from owning the *inflated* stock. Consequently, losses resulting from market fluctuations generally are not recoverable in such cases, because they are not caused by the fraud.

Here, assuming, as we must, that the facts presented by plaintiff are true, the consequence of defendant's alleged malpractice was that plaintiff suffered a delay in the sale of its securities and debt. The consequence of that delay is that plaintiff received less money from the sale than it would have received if the sale had occurred when it would have occurred but for defendant's malpractice. The difference in sales price constitutes damages that plaintiff can recover from defendant, because that difference is the direct consequence of the delay that defendant's alleged malpractice caused. That is consistent with a basic principle of Oregon negligence law, which imposes liability for harm on any person whose negligent conduct was a substantial factor in causing the harm. *See, e.g., Brennan v. City of Eugene*, 285 Or 401, 413, 591 P2d 719 (1979). If plaintiff proves that defendant acted negligently and that that negligence caused a delay in the offering of

■ It is axiomatic that, in reviewing a summary judgment, we are to view the facts in a light as favorable to the nonmoving party as the record permits. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). For the foregoing reasons, under that view of the facts, plaintiff's contention that defendant's negligence was the cause of plaintiff's damages presents a triable question for the factfinder.

Reversed and remanded as to damages for reduced proceeds from securities and debt offerings; otherwise affirmed.

---

plaintiff's securities and debt, which caused plaintiff to receive less in sale proceeds than it would have received but for the delay, a jury could find that defendant's negligence was a substantial factor in the loss that plaintiff suffered as a result the delay.