157 P.3d 790 (2007)
212 Or. App. 468
Eddie L. WILCHER, Plaintiff-Respondent,
v.
AMERITITLE, INC., an Oregon corporation, Defendant-Appellant.
Court of Appeals of Oregon.
Argued and Submitted September 15, 2006.
Decided May 9, 2007.
*791 Charles F. Adams, Portland, and Donald R. Crane, Klamath Falls, argued the cause for appellant. With them on the briefs was Stoel Rives LLP.
Douglas J. Richmond, Medford, argued the cause for respondent. With him on the brief was Kellington, Krack, Richmond, Blackhurst & Glatte, LLP.
Before LANDAU, Presiding Judge, and SCHUMAN[*] and ORTEGA, Judges.
LANDAU, P.J.
This is a case in which a dispute between contractors about the construction of an $8,000 chimney was transformed into claims against a title company for breach of contract and negligence totaling in excess of $200,000. The trail from the chimney dispute to the action against the title company is a convoluted one and, indeed, its very convolution is at the core of the arguments on appeal. Suffice it to say at this introductory juncture that the case ultimately went to a jury, which found in favor of one of the contractors and awarded damages against the title company for both noneconomic and economic loss. The title company now appeals, arguing that it was entitled to judgment as a matter of law on both the noneconomic and economic damage awards on the ground that any such harm that plaintiff suffered was simply not a foreseeable consequence of anything that the title company did. We agree and reverse in part.
I. FACTS
The relevant facts are rather involved. They are for the most part uncontroverted, however. The story begins with the construction of a house. Plaintiff is a contractor who builds "spec" homes. In 1997, he obtained a $160,000 line of credit from C & K Markets, Inc., 401(k) Profit Sharing Plan (C & K) to finance the construction of one such spec home. Plaintiff hired Mark Wendt Homes, Inc., (Wendt) to build a chimney for the home. Plaintiff thought the construction of the chimney would cost around $8,000. Wendt completed construction of the chimney in July 1997. Plaintiff, however, did not pay Wendt for the work; among other things, plaintiff thought that Wendt wanted too much money for the project. On September 12, 1997, Wendt filed a construction lien in the amount of $13,610.
In the meantime, C & K had advanced plaintiff approximately $150,000 of the $160,000 line of credit. Plaintiff, however, had not made any interest payments as required under the terms of the loan. Plaintiff ultimately defaulted entirely, and, in March 1998, C & K recorded a trustee's notice of sale of the property, based on plaintiff's failure to make payments on the loan and on his failure to resolve the lien that Wendt had filed. The sale was scheduled for August 5, 1998.
Notwithstanding C & K's notice, plaintiff listed the property for sale in late spring 1998. Harold and Nancy Soucy offered to purchase the property from plaintiff for $250,000. As part of the deal, the Soucy's agreed to pay off the Wendt lien  which, with accumulating interest and attorney fees, had grown to approximately $20,000  and to pay off plaintiff's obligation to C & K.
This is where defendant enters the story. Defendant is the title company that the Soucys hired to make the escrow arrangements for the sale of plaintiff's property. Plaintiff had no contact with defendant in setting up the escrow arrangements.
The Soucys then met with Wendt to negotiate their own settlement with Wendt. The Soucys brought with them Gary Hart, whose child was married to the Soucy's child and who also owned a nursery. Under the terms of the settlement with Wendt, the Soucys agreed to pay $3,000 in cash, while Hart agreed to contribute $9,000 worth of nursery stock. The Soucys informed plaintiff of the settlement, and plaintiff approved. Neither the Soucys nor Wendt, however, executed the document that memorialized the settlement.
*792 Defendant, which had no knowledge of those settlement talks, proceeded with the closing. On July 22, 1998, Jean Phillips, one of defendant's employees, contacted all of plaintiff's creditors to determine the exact amounts necessary to release the liens against the property. She contacted Wendt's lawyer to obtain the payoff amount to satisfy the construction lien. In the course of that conversation, the lawyer asked Phillips about the sale price for plaintiff's property. Phillips told the lawyer that it was selling for $250,000. The significance of the disclosure of that sale price turns out to be the heart of the dispute between plaintiff and defendant.
Wendt decided not to go forward with the settlement with the Soucys. Wendt testified that he made that decision because an inspection of the nursery stock that Hart had offered revealed that the trees had no real value. Harold Soucy testified that Wendt had told him that he had backed out of the settlement because his lawyer, having learned of the $250,000 sale price, advised him not to compromise. In either event, Wendt did not settle. The Soucys meanwhile decided to proceed with the purchase. That meant that plaintiff was entitled to insist that the Soucys pay Wendt the full amount of the construction lien.
Plaintiff, however, elected not to enforce that obligation. Instead, he obtained, for the sum of $816, a release bond on the Wendt lien. The sale to the Soucys closed on July 30, 1998. Nothing was deducted from the sale price to satisfy Wendt's construction lien. The C & K loan was paid in full, and the Soucys took possession of the property.
At this point, heretofore completely unrelated transactions come into play. Plaintiff had problems with other creditors, including Merland Rice, who had sued plaintiff for $72,997, plus interest. On September 22, 1998, plaintiff allowed a judgment to be taken against him for that amount. At the same time, the Oregon Department of Revenue obtained a judgment against plaintiff for unpaid employment taxes.
All the while, the Wendt construction lien remained unpaid. The matter came to trial in June 2000. The trial court entered judgment in favor of Wendt for a principal amount of $11,600, plus interest and attorney fees, which ultimately totaled something in excess of $60,000. Plaintiff appealed the judgment, but we affirmed. Mark Wendt Homes, Inc. v. Wilcher, 186 Or.App. 416, 63 P.3d 1271 (2003).
In the meantime, since the filing of the Wendt construction lien, plaintiff found it increasingly difficult to borrow money. Because of the filing of the liens, and because of the outstanding judgments against him, plaintiff's credit score decreased, resulting in lenders offering him financing subject to increased interest rates that made borrowing financially unappealing.
Plaintiff sued defendant, which, it will be recalled, was the title company that had handled the escrow for the sale of his property to the Soucys. Plaintiff alleged three claims: breach of implied contract, negligence, and "breach of confidentiality."
According to the allegations of the complaint, defendant breached an implied obligation to maintain confidences when defendant's employee, Phillips, disclosed the $250,000 sale price to Wendt's attorney. As a result of that breach, the complaint alleges, plaintiff suffered economic harm in the amount of $816 for the cost of the lien release bond and $101,329.67 in attorney fees that plaintiff was forced to spend litigating the $11,600 Wendt construction lien matter, occasioned by Wendt backing out of the settlement with the Soucys following the disclosure of the sale price.
The negligence claim was based on the same allegations, including the allegations that, as a result of the negligent disclosure of the Soucy transaction sale price, plaintiff was forced to spend the $816 for the bond and the $101,329.67 in attorney fees. In addition, plaintiff alleged that he had suffered $100,000 in noneconomic harm to his reputation for timely paying bills.
The breach of confidentiality claim was based on the same allegations as the negligence claim and included the allegation that plaintiff had suffered $100,000 in noneconomic harm to his reputation.
*793 At trial, plaintiff contended that defendant should be held accountable for the losses  both noneconomic and economic  that flowed from the inadvertent disclosure of the sale price of the Soucy transaction. Plaintiff's theory went something like this: Defendant's employee disclosed the $250,000 sale price to Wendt's lawyer. Wendt's lawyer then told Wendt not to accept the compromise that previously had been negotiated with the Soucys and Hart. Wendt backed out of that settlement. As a result of Wendt backing out of the settlement, plaintiff was "forced" to purchase the lien release bond and further forced to litigate the validity of the lien itself. In the meantime, as a result of the outstanding lien, his reputation for paying bills in a timely fashion was tarnished, and he suffered an inability to borrow money.
At the close of plaintiff's case, defendant moved to dismiss or, in the alternative, for a directed verdict on both the claim for noneconomic damages  that is, the claim for damage to plaintiff's reputation for paying bills  and the claim for economic damages. Defendant argued that, as a matter of law, the claim for damage to plaintiff's reputation failed because of a failure to plead and prove special damages. Defendant further argued that the claims for damage to plaintiff's reputation and his economic losses failed because those losses were simply not a foreseeable consequence of disclosing the sale price of the Soucy transaction. According to defendant, the undisputed facts demonstrate that any losses that defendant suffered were occasioned by the construction lien and the C & K lien, both of which had been filed before the Soucy transaction; the $73,000 Rice judgment; the Oregon Department of Revenue judgment; and the construction lien judgment, none of which defendant had any role in. At most, defendant argued, it might be argued that the maximum amount of foreseeable economic harm would be the difference between the $12,000 that plaintiff could have insisted that the Soucys pay and the $19,586.30 that comprised the payoff amount at the time of the defendant's employee's disclosure of the Soucy transaction sale price  that is, $7,586.30. The trial court denied the motions.
The jury returned a verdict in favor of plaintiff for $102,341.78 in economic damages and $75,000 in noneconomic damages. The jury, however, determined that plaintiff was 30 percent at fault. The trial court entered a judgment reducing the damages accordingly.
II. ANALYSIS
On appeal, defendant advances two assignments of error, one concerning the award of noneconomic damages and the other concerning the award of economic damages.
A. Noneconomic damages
In its first assignment of error, defendant argues that the trial court erred in denying its motion to dismiss or, in the alternative, for a directed verdict on the claim for noneconomic damages. Defendant supports the contention with two arguments.
The first argument is that, as a matter of law, a claim for noneconomic damages for harm to one's reputation, by itself, is not recoverable under Oregon law. According to defendant, an action for harm to reputation is, in effect, an action for defamation, which requires proof of pecuniary harm.
The second argument is that, even if noneconomic damages for harm to reputation might be recoverable in some cases, there is a complete absence of evidence that anything that defendant did caused plaintiff harm to his reputation for paying bills. Specifically, defendant argues, there is a complete absence of any evidence linking its employee's disclosure of the Soucy transaction sales price to plaintiff's inability to borrow money. The only evidence on that point, defendant contends, is plaintiff's own admissions that he could not obtain credit before the Soucy transaction, as a result of the filing of Wendt's construction lien and the filing of the C & K foreclosure notice, followed by the entry of various and substantial judgments against him, with which defendant had no involvement.
Plaintiff responds to the first argument by contending that the law of defamation is irrelevant because his injury does not derive from the content of anything that defendant or its employee said. Instead, plaintiff argues, where harm to reputation is a "foreseeable *794 consequence" of negligently releasing confidential information, no evidence of pecuniary harm is required.
In response to the second argument, plaintiff offers very little. He actually concedes that "it may be unlikely that a rational jury might find that the credit problems caused by the failed settlement and continuing litigation and judgment were, in fact, foreseeable at the time of entering into the contract." He nevertheless insists that, while unlikely, it is still "possible" that the jury found that to be the case. In support of that assertion, however, he advances only a conclusion that
"there was sufficient evidence from which the jury could have concluded that, at the time that the [proposed settlement] contract was entered into by the parties, it was reasonably foreseeable that releasing confidential information to a litigant could cause a settlement to fail, that continuing litigation would be necessary as a result thereof, and that the continuing litigation and the ultimate judgment could affect plaintiff's credit reputation."
Plaintiff identifies no such evidence, however. He refers to nothing in the record that specifically responds to defendant's contention that there is a complete absence of evidence linking the disclosure of the sale price of the Soucy transaction and any harm to plaintiff's reputation for paying bills.
We need not address defendant's first argument, because we find the second to be dispositive. In reviewing the denial of a motion for a directed verdict based on the insufficiency of the evidence, we examine that evidence in the light most favorable to the party that obtained a favorable verdict. Roop v. Parker Northwest Paving Co., 194 Or.App. 219, 245, 94 P.3d 885 (2004), rev. den., 338 Or. 374, 110 P.3d 113 (2005). We will not set aside the verdict unless we conclude that there is no evidence from which the jury could have found facts necessary to support it. State v. Brown, 306 Or. 599, 604, 761 P.2d 1300 (1988). In this case, as we have noted, plaintiff's claims were predicated both on negligence and breach of contract theories. To establish damages under either theory, a plaintiff must show that his or her harm was both the factual and the foreseeable consequence of the defendant's conduct. Oregon Steel Mills, Inc. v. Coopers Lybrand, LLP, 336 Or. 329, 340-41, 83 P.3d 322 (2004); Logan v. D.W. Sivers Co., 207 Or.App. 231, 243, 141 P.3d 589 (2006), rev. allowed, 342 Or. 299, 152 P.3d 902 (2007).
The evidence in this case falls well short of that standard. To begin with, it is doubtful that plaintiff's evidence established that the disclosure of the Soucy transaction sales price was the cause-in-fact of the harm to plaintiff's reputation and consequent inability to obtain credit. There is a complete absence of evidence that, but for the disclosure of the sales price, plaintiff would have been able to obtain credit. To the contrary, as defendant observes  and as plaintiff does not contest  plaintiff had a history of defaults, lien filings, and judgments against him before and after the Soucy transaction. The undisputed evidence shows that plaintiff could not obtain credit because of the filing of the Wendt construction lien, the filing of C & K's notice of trustee's sale, the $73,000 Rice judgment, and the Oregon Department of Revenue judgment, none of which involved defendant's conduct in any way.
Aside from that, there is no evidence that, at the time that defendant's employee, Phillips, inadvertently disclosed the sales figure to Wendt's lawyer, it was reasonably foreseeable to the title company  which knew nothing of the settlement negotiations between Wendt and the Soucys and Hart  that (1) Wendt's lawyer would communicate the information to Wendt; (2) Wendt would decide to back out of the settlement with the Soucys and with Hart; (3) plaintiff would agree not to enforce his contractual right to have the Soucys pay Wendt the lien and instead assume the obligation himself by purchasing the lien release bond; (4) plaintiff would contest the Wendt construction lien claim and lose; and (5) the resulting judgment would adversely affect plaintiff's reputation and, consequently, his credit.
Of particular concern is the fact that plaintiff does not explain  and we do not understand  why it was reasonably foreseeable to the title company that plaintiff would decline to require the Soucys to pay the Wendt *795 construction lien as was provided in plaintiff's contract with the Soucys. Nothing in the record suggests that defendant or anyone else reasonably could have foreseen that.
We therefore conclude that defendant is correct that there is a complete absence of evidence supporting the jury's verdict in favor of plaintiff for noneconomic damages and that the trial court erred in allowing the matter to go to the jury.
B. Economic damages
In its second assignment of error, defendant contends that the trial court erred in denying its motion for a directed verdict as to the claim for economic damages. Defendant argues that, whether the claim is for negligence or breach of contract, the law limits any damages to those that were reasonably foreseeable. In this case, defendant contends, it was not reasonably forseeable that, when its employee disclosed the Soucy transaction sale price and Wendt backed out of his pending settlement negotiations with the Soucys and Hart, plaintiff then would waive the enforcement of his own contractual right to have the Soucys pay the Wendt construction lien, and that plaintiff would then spend in excess of $100,000 contesting a lien claim for one-tenth that amount of money.
At the very worst, defendant contends, it might be contended that the jury could have found that, at the point that its employee disclosed the Soucy transaction sale price, it was reasonably foreseeable that plaintiff would incur the cost of paying the Wendt construction lien-less any amount that he would have paid had Wendt not backed out. It is undisputed, defendant contends, that, at the time of the disclosure, the payoff amount was $19,586.30, of which $12,000 would have been paid by the Soucys under the terms of plaintiff's sale agreement with them. Had plaintiff not allowed the Soucys to avoid the obligation to pay that amount, he would have been obligated to pay no more than $7,586.30.
Plaintiff again concedes that "it is unlikely that defendant would have foreseen the total amount of litigation expenses that occurred" because of the failed settlement. Beyond that, his argument consists primarily of the conclusion that "it was foreseeable that a release of confidential information could adversely affect litigation and any settlement thereof," without references to evidence in the record that might support the point.
For the same reasons that we have concluded that plaintiff's claim for noneconomic damages fails on foreseeability grounds, we also conclude that his claim for economic damages fails. In particular, we conclude that defendant is correct that it was not reasonably foreseeable that plaintiff would forgo his right to insist that the Soucys pay Wendt $12,000 on the construction lien and instead spend nearly ten times that amount to contest the lien. We conclude that, on this record, the maximum amount of reasonably foreseeable harm to plaintiff was the difference between the $12,000 that plaintiff could have insisted the Soucys pay and the $19,586.30 that comprised the payoff amount on the Wendt construction lien at the time of defendant's disclosure. Accordingly, we conclude that defendant is correct that the judgment for economic damages must be reversed and remanded for entry of judgment in the amount of $7,586.30.
Award of noneconomic damages reversed; award of economic damages reversed and remanded for entry of judgment in the amount of $7,586.30; otherwise affirmed.
NOTES
[*] Schuman, J., vice Ceniceros, S.J.