Argued November 3, 1966, reversed and remanded
March 22, 1967

# HOWERTON, *Respondent, v.* PFAFF, *Appellant.*

425 P. 2d 533

*Gerald R. Pullen,* Portland, argued the cause for appellant. On the brief were Hershiser, Canning, Pullen, Mitchell & Rawls.

*Ray G. Brown,* Portland, argued the cause and filed a brief for respondent.

Before McAllister, Chief Justice, and Sloan, Goodwin, Holman* and Lusk, Justices.

LUSK, J.

In a personal injury action growing out of a collision between automobiles, plaintiff, the driver of one of the cars, recovered a judgment for $5,000 general damages and $1,563.80 special damages. Defendant appeals, assigning two alleged errors, both relating to items of damage.

By the first of these assignments it is contended that the court erred in denying defendant's motion to withdraw from the consideration of the jury one of the specifications of injury to plaintiff in the amended complaint, to-wit: "Injury to plaintiff's right

---

* Did not participate in this decision.

groin resulting in right inguinal hernia." The ground of the motion, though imperfectly stated, was that there was no evidence that the accident was the cause of the hernia.

The accident occurred on November 10, 1964. Plaintiff was making a right-hand turn into the driveway of his home when his car was struck at the left rear by a car driven by the defendant. Plaintiff testified that immediately after the accident he was "shook up all over" and his neck "started to hurt." He saw a doctor later that day who "went over" his neck and back and prescribed drugs, but did not otherwise treat him. On December 1, 1964, he consulted his family physician, Dr. McMillan, and complained to him of a sore neck. Dr. McMillan referred him to Dr. Begg, an orthopedist. On January 31, 1965, while under the care of Dr. Begg, he was hospitalized for treatment of a cervical strain. He was discharged from the hospital on February 7, 1965. On February 16, 1965, plaintiff filed his complaint in this case. It does not include hernia among the injuries alleged. Plaintiff's first complaint to a doctor about an injury to his groin was made to Dr. McMillan on August 10, 1965. Dr. Mc-Millan diagnosed the condition as right inguinal hernia and performed a herniorrhaphy on August 23, 1965. The hospital record in evidence contains Dr. McMillan's history of the case, which states: "He [plaintiff] noticed a swelling in the right groin a month or six weeks ago and noticed that it was enlarging." On October 12, 1965, plaintiff filed an amended complaint in which for the first time he alleged injury to the right groin resulting in hernia as one of the injuries caused by defendant's negligence.

Plaintiff's testimony concerning the discovery and

development of the groin injury is somewhat vague and inconsistent. He said at first "I noticed a lump there right after the accident"; "it was soon after that"; to start with it was "big as an egg"; he first noticed it before Christmas, 1964, and at that time "it felt sore and there was a lump there and it kept getting bigger." When pressed on cross-examination as to the time when he first noticed the lump he testified that it was "something like" three weeks after the accident.

The only medical testimony upon the question of causation was furnished by Dr. McMillan. He testified on direct examination that in his opinion "it's highly probable that Mr. Howerton's hernia is a direct result of the accident." He went on to state his reasons for this opinion:

"My reasons for this opinion are, although I realize that the date of his accident was the 10th of November and he did not, to me, complain of the hernia until the date that I gave, August 10th. He, again, is not a man that complains every time he cuts his finger. I did not examine him because he did not complain until the hernia was of sufficient size and of sufficient problem that he would present himself in my office saying, 'I have something here, I don't know what it is, but it's bothering me. Now, let's do something about it.' I cannot say that the hernia existed prior to my finding it. I don't know how long it existed. But, it was there when I saw him on the 10th of December[1] and was repaired surgically. But, having done the type of heavy work and the type of work that a man of his years has been accustomed to do, it would seem probable that if this were an inherent weakness, it would have broken down long before now."

[1] This is an obvious error. The witness was referring to August 10, the day the plaintiff disclosed the hernia to him.

On cross-examination he testified as follows:

"MR. HERSHISER: Q You don't have any mental reservations at all in saying that the accident with Mrs. Pfaff caused that hernia?

\* \* \* \* \*

"MR. HERSHISER: Q Mrs. Pfaff is the defendant. I'm awfully sorry, Doctor, but there is no reservation in your mind about this hernia being a product of this accident that your patient described to you of November 10?

"A I wonder if the Clerk could recall what I said when I was asked—I said, 'I think it was probably.' But I don't think I said, 'I believe.' I believe is what I said, as I recall.

"THE COURT: The Court wrote it down. Do you mind if I read it?

" 'Cause of hernia: Probably the direct result of the accident.'

"THE WITNESS: Thank you.

"MR. HERSHISER: Q You have no reservation in your mind about that?

"A Define how you, as an attorney, interpret 'reservation'.

"Q I don't know. Would it be better to say, Doctor, that this is in the realm of possibility?

"A Yes.

"Q You concede it's more a possibility than it is a probability, is that not true, Doctor?

"A To me they are equal, to you they are not; as I understand, there is a probability and a possibility.

"Q Possibility is the word you should use.

"A I'm sorry, yes."

Again, on redirect examination, he testified:

"How soon would you expect, following injury of the type Mr. Howerton had here, for his hernia

to reach a state where surgery would be indicated to you?

"A I think this depends a lot on the type of individual who develops a hernia. Some people are very much more critical of pain and of discomfort than others, and I do not think that it's—that it's out of line or abnormal such that this time lag would occur and that the possible source of his hernia could be his accident."

██ It is settled law in this state that medical testimony in a case of this kind is not sufficient if it fails to show with reasonable certainty that there was a causal connection between an accident and the injury: *Crawford v. Seufert*, 236 Or 369, 375, 388 P2d 456, 2 ALR3d 354; *Parker v. Weyerhaeuser Co.*, 236 Or 194, 387 P2d 982. In our view Dr. McMillan's testimony does not meet this test. He did not help matters any by making possibility equal probability and he conceded finally that "possibility" was the word he should use. See *Washburn v. Simmons*, 213 Or 418, 421, 323 P2d 946, 325 P2d 255. Possibilities are not enough.

Plaintiff contends, however, that medical evidence was not needed, that "[o]rdinary hernia is certainly within the common knowledge of laymen. * * * Expert, or medical testimony, should not be required to establish causal relation between a bump to the groin resulting in a lump or hernia * * *."

The argument is based upon what we consider to be an inadmissible construction of the testimony. It assumes that plaintiff testified that when the cars collided he sustained a bump or blow to the groin. The transcript reads:

"Q Now, when, after the accident, did you first notice anything wrong with your groin?

"A Well, I felt a bump in there.

"MR. HERSHISER: Your Honor, I would exclude any testimony based upon the testimony of Dr. McMillan regarding this, and it should be excluded.

"THE COURT: Well, the Court will get to that at the appropriate time. The question now is, when did you first feel pain in your groin, am I correct?

"MR. BROWN: Yes.

"THE COURT: I will allow him to answer the question.

"MR. BROWN: Yes.

"You may go ahead.

"A  I noticed a lump there right after the accident.

"Q  The question, Mr. Howerton, calls for time.
"A  Yeah.

"Q  Not what you felt. Can you answer it as to time?
"A  It was soon after that."

The testimony clearly related to what the plaintiff noticed "after the accident," not to the impact of the collision. Later, under cross-examination, the plaintiff, as above stated, changed his testimony—or, it might be more accurate to say, explained what he meant by "right after the accident"—and fixed the time when he first noticed the swelling in his groin as about three weeks after the accident.

█ We agree that "ordinary hernia" is within the common knowledge of laymen, but there is a wide difference between determining whether an injury "actually exists": *Skeeters v. Skeeters,* 237 Or 204, 230, 389 P2d 313, 391 P2d 386, and its cause. The plaintiff was 71 years of age at the time of the accident and a carpenter and cabinet maker by trade. The only immedi-

ate effects of the accident were that he was "shook up" and his neck hurt. There is no evidence of a bruise anywhere on his body and no other objective evidence of injury. The medical evidence shows that trauma may cause inguinal hernia, but there are other causes, such, for example, as strain of abdominal muscles. See *Parker v. Weyerhaeuser Co.*, supra. The swelling in the plaintiff's groin did not appear until about 21 days after the accident. Under these facts causation became a medical question; the jury could do no more than guess about it. For a case very close to this one on its facts, in which the court held that the evidence was not sufficient to show that an accident caused a hernia, see *Bertram v. Wunning* (St. Louis CA, Mo) 385 SW2d 803.

We hold, therefore, that the court erred in denying the defendant's motion to remove the hernia issue from the jury's consideration.

■ The other assignment of error challenges the court's denial of defendant's motion to remove from consideration of the jury plaintiff's claim for $1100 for time loss from his employment. The evidence shows that prior to the accident plaintiff had been earning "around a hundred dollars a month" and that for eleven months thereafter he was incapacitated for work because of the injury sustained in the accident. We think this was sufficient to take the question to the jury: *Fields v. Fields,* 213 Or 522, 536-538, 307 P2d 528, 326 P2d 451.

The judgment is reversed and the cause remanded for a new trial.