Argued February 6, reversed and remanded March 26, petition
for rehearing denied April 23, 1969, petition for writ of
certiorari to United States Supreme Court
denied November 10, 1969

REEVES, *Respondent, v.* PACIFIC FAR EAST
LINE, INC., *Appellant.*

452 P2d 313

*Eugene D. Cox,* Portland, argued the cause for appellant. On the brief were Floyd A. Fredrickson and Gray, Fredrickson & Heath, Portland.

*Ben T. Gray,* Portland, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and McALLISTER, GOODWIN, HOLMAN and HAMMOND, Justices.

HAMMOND, J. (Pro Tempore).

Plaintiff, a merchant seaman, brought this action against defendant for damages resulting from personal injuries sustained in September 1964 while serving aboard defendant's vessel the SS Canada Bear. From a judgment for plaintiff in the sum of $3,000 the defendant appeals, contending that the trial court erred in permitting the jury to consider a claim of temporary hearing impairment and in instructing the jury on the question of future pain and suffering and interference with plaintiff's normal and usual activities.

The injuries in question occurred while plaintiff was serving as a member of the deck crew at a time when the vessel was being secured for sea after loading cargo at San Francisco. The No. 1 hatch had been battened and booms for that hatch were being lowered into their cradles. A boom on the port side of the hatch swung wide dropping a guy block over the side of the ship. As plaintiff was helping to pull the block on board the ship a strain on a guy line caused it to become taut, jerking the wood and steel block so that it hit plaintiff on the left shoulder and side of his head, knocking him over the No. 1 hatch.

Plaintiff testified that he was knocked partially unconscious by the blow and that swelling resulted and that his face was "bruised black." He saw the purser who gave him some pills and the ship put to sea. He was asked about hearing problems and testified as follows:

"A Well, as far as I know, my hearing is— no problem with it right now, but there was for

a while. That's true. And I had this operation, I guess they refer to it as minor, whatever it was. I don't have my hearing problems at this time.

"Q (By Mr. Gray) But at the time you say you were having problems, describe your own symptoms from your point of view.

"A I had a ringing, and it would ache, and I don't know. You might say uncomfortable all the time, lots of pressure on it, I guess."

Plaintiff further testified that a lump developed behind his left ear a month or two after the accident and that it was treated later by a doctor at Coos Bay who performed minor surgery upon it.

A doctor who examined plaintiff at the request of defendant's attorney was called as a witness for the plaintiff and testified that he examined plaintiff about three years after the accident. The doctor took a history from the plaintiff which he related as follows:

"A * * * He told me that in late 1966 [sic] he was employed aboard the CANADA BEAR. He had been struck by a 75-pound guide block in the region of the left shoulder and the left side of his neck.

"The patient had been knocked down and dazed as a result of this impact, and then noticed the onset of swelling on the left side of his neck and jaw. The ship was in the process of leaving San Francisco at the time of the injury, so medical attention was not available. The patient was able to continue standing his watches, which was his regular work, but was unable to do any overtime work because of the persistence of the swelling.

"The patient consulted a physician a few months later, the exact date he didn't remember, and had a lump removed from behind the left ear and this was done in the doctor's office. Despite this treatment, he continued to have pain in the region of the

left shoulder and he consulted a physician concerning this in Antofagosta, Chili, and also in Davao, Philippine Islands. And the latter doctor, the one in the Philippines, treated the patient with medications."

Regarding the lump behind plaintiff's ear that was treated by minor surgery the doctor testified:

"A * * * I felt that this cyst in the back, behind the left ear, was probably a sebaceous cyst. There's no way of knowing this for certain except to obtain a pathological report from the physician that had excised this cyst. But the—by far the most common sort of cyst in the region would be a sebaceous cyst. These cysts occur not due to trauma but occur spontaneously.

"I can imagine that he could have had one that had been large enough to have partially occluded the external ear canal that would have made his hearing somewhat diminished during the time that the cyst was present, and I can see that would have improved with the removal. I didn't feel this had anything to do with the accident, however * * *."

Such evidence as was presented on the claim of hearing impairment could only lead the jury to speculates as to whether that problem had a causal connection with the accident or whether, instead, it had its origin in a sebaceous cyst that was unrelated to the accident. It was improper to permit the jury to conjecture upon this issue. *Howerton v. Pfaff*, 246 Or 341, 425 P2d 533 (1967).

Since this matter must be sent back for a new trial it is unnecessary to treat herein the second assignment of error, it being apparent that the problem will not again arise.

Reversed and remanded for a new trial.