Argued October 29, affirmed December 26, 1975

CLELAND, *Appellant, v.* WILCOX, *Respondent.*

543 P2d 1032

*Gary L. Hill,* Roseburg, argued the cause for appellant. With him on the brief was Slocum and Poole, Roseburg.

*James H. Gidley,* Portland, argued the cause for respondent. With him on the brief was Cosgrave & Kester, Portland.

BRYSON, J.

This is an action to recover damages for injuries

incurred in an automobile accident. The trial court allowed defendant's motion for involuntary nonsuit. Plaintiff appeals.

The sole assignment of error is that "[t]he trial court erred in ruling that expert medical evidence was required to make out a case of causal relationship between plaintiff's injuries and the accident."

We review the evidence in a light most favorable to plaintiff, including all favorable inferences that may be drawn from the evidence.

On November 23, 1972, plaintiff was driving north on Interstate 5 near Albany, Oregon. Traffic was heavy and plaintiff was forced to stop his car on the freeway. He was struck from the rear by a car driven by a Mr. Newell, who in turn had been struck from the rear by defendant's vehicle. The evidence shows that the impact of the collision was not severe and caused damage of $94 or $95 to plaintiff's car. Plaintiff testified that "all of a sudden I had one heck of a jolt" which "threw me up against the steering wheel." However, plaintiff testified that he experienced no back pains and noticed no physical injury to his person, other than a bruise to his right hand which required no medical treatment. Plaintiff drove on to Portland and three days later returned home and continued his regular activities and work without difficulty.

"About four weeks following the accident" plaintiff began to experience pain in his lower back and right leg. He testified:

"Q  Did you at that time or shortly after you started to commence to have pain go to see a doctor?

"A  Yes, sir, I did. I went to Doctor Williams in Myrtle Creek. I had the flu also, and I was talking to Doctor Williams and told him about

my flu and also about my back pains, and that's when he asked me if it bothered me.

"* * * * *.

"Q    Mr. Cleland, did he at that time give you any treatment for the back?

"A    No, sir, he did not.

"Q    What did he treat?

"A    He treated the flu I had."

The pain gradually increased and in March of 1973 plaintiff visited a chiropractic physician about 10 times in a six-week period. In May of 1973 plaintiff returned to his doctor in Myrtle Creek for treatment and was hospitalized for six days. In June of 1973 plaintiff was referred to Dr. Raaf, an orthopedic surgeon. He diagnosed plaintiff's ailment as a "protruded intervertebral disc" and surgically removed "the protruded part of the disc." The evidence shows that plaintiff "had no intervening consequential trauma to his back from November 23, 1972" until he came under Dr. Raaf's care.

Dr. Raaf's testimony is the only medical or expert testimony offered by plaintiff. This was done by reading his deposition into the record. He testified:

"A    * * * It's extremely difficult to determine all the factors involved in the production of a protruded intervertebral disc. I would say that about 50 percent of the patients upon whom I have operated for protruded intervertebral disc had no history of a definite injury to the back as a causative agent in the production of the protruded disc.

"In other words, probably 50 percent of the patients who developed protruded intervertebral disc developed the protrusion simply as a result of the normal wear and tear on the back, as a result of lifting or carrying out the normal duties that one has to do.

"The other 50 percent have a specific injury from which they can date the onset of pain and the symptoms of a protruded intervertebral disc.

"So, I think that anything that injures the back can be a contributory agent in the production of a protruded intervertebral disc.

"On the other hand, it doesn't require a specific back injury for a protruded intervertebral disc to develop.

"Q  But, in this specific case, however, do you have an opinion?

"A·  I would say, that if this man had a back injury at the time of the rear-end collision in November, 1972, the collision probably contributed to the production of the protruded disc."

On cross-examination Dr. Raaf testified:

"Q  And you told us that if there was a back injury, that that could be a factor?

"A  That's correct.

"Q  And you, of course, in order for that factor to exist, you're telling us that there must be a back injury to start with?

"A  Well, I think that's correct, although I don't know whether there was a back injury at the time of the autmobile accident or not. It's possible that he could have had a back strain that didn't seem, to him, to be very severe, or possibly not severe enough to even mention and yet, if he had a wrenching of his back at the time of the November accident, it could contribute to the production of the protruded disc.

"Q  There's nothing, as I review your reports and the history which he gave you, which mentioned any back injury on the date of the accident?

"A  That's right. He mentioned that he had this rear-end collision in November, but according to the history that was obtained here, it didn't result in evidence of injury."

In *Austin v. Sisters of Charity,* 256 Or 179, 470 P2d 939 (1970), an action for personal injuries due to negligence of the hospital x-ray technician, we relied upon the rule stated in *Uris v. State Compensation Department,* 247 Or 420, 427 P2d 753 (1967). In *Uris* we stated:

"It is, of course, the settled rule that

" '* * * where injuries complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science and must necessarily be determined by testimony of skilled, professional persons. * * *' [Citations omitted.]

"* * * * * *.

"In the compensation cases holding medical testimony unnecessary to make a prima facie case of causation, the distinguishing features are an uncomplicated situation, the immediate appearance of symptoms, the prompt reporting of the occurrence by the workman to his superior and consultation with a physician, and the fact that the plaintiff was theretofore in good health and free from any disability of the kind involved. * * *" 247 Or 424, 426.

*Howerton v. Pfaff,* 246 Or 341, 425 P2d 533 (1967), cited with approval in *Uris,* involved a rear-end automobile collision. The question was whether medical testimony was required to prove that plaintiff sustained an inguinal hernia as a result of the collision. Plaintiff was "shook up" but there were no other objective signs of injury until 21 days after the accident. We held that an "ordinary hernia" is within common knowledge of laymen but under such facts causation became a medical question. *See also Washburn v. Simmons,* 213 Or 418, 421, 323 P2d 946, 325 P2d 255 (1958); *Larson v. State Ind. Acc. Com.,* 209 Or 389, 399, 307 P2d 314 (1957). In *Sims v. Dixon,* 224 Or 45,

48, 355 P2d 478 (1960), wherein plaintiff claimed chest pain and a heart condition caused by defendant's negligence in a near collision, we stated:

> "It is well established that the causal connection between defendant's acts or omissions and the plaintiff's injuries must not be left to surmise or conjecture. The proof of the material issue must have the quality of reasonable probability, and a mere possibility that the alleged negligence of the defendant was the proximate cause of plaintiff's injuries is not sufficient. The rule of reasonable probability also applies to expert witnesses." (Citations omitted.)

This case is distinguishable on the facts from *Feist v. Sears, Roebuck & Co.,* 267 Or 402, 517 P2d 675 (1973), and *Birkes v. Wade,* 266 Or 598, 511 P2d 831 (1973). Plaintiff in his brief acknowledges that there is no medical testimony by Dr. Raaf to establish causal connection between the accident and alleged injuries as required in *Sims v. Dixon,* supra, in the case at bar. Plaintiff states in his brief:

> "* * * The Court has approved the notion that, in appropriate circumstances, awards may be made when medical testimony on these matters is inconclusive, indecisive, fragmentary *or, such as here, nonexistent.*" (Emphasis added.)

Nevertheless, plaintiff argues that "[i]rrespective of trends elsewhere towards relaxation of the indispensibility of expert evidence, the Oregon Court has achieved significant relaxation" and relies upon *Uris v. State Compensation Department,* supra.

However, based on the evidence of Dr. Raaf, we cannot agree that the cause of plaintiff's protruded intervertebral disc between the fifth lumbar vertebra and the sacrum was an "uncomplicated situation." The plaintiff very frankly testified that there was no "immediate appearance of symptoms" and he did not

report to the doctor until he became ill with the flu some four weeks following the accident. He had been free from any medical difficulty following the accident. Dr. Raaf testified that "[i]t's extremely difficult to determine all the factors involved in the production of a protruded intervertebral disc" and that about "50 percent of the patients * * * developed the protrusion simply as a result of the normal wear and tear on the back."

For these reasons we conclude that the trial court did not err in granting defendant's motion for nonsuit.

Affirmed.