Argued and submitted October 5, 2004, affirmed March 30, 2005

Nisha JOSHI,
Personal Representative of
the Estate of Satyapriy Joshi,
*Appellant,*

*v.*

PROVIDENCE HEALTH SYSTEM OF OREGON CORP.,
dba St. Vincent Hospital & Medical Center,
an Oregon business;
James L. Hedtke, M.D.; and Ezra Azhar, M.D.;
and Aloha Family Practice Clinic,
an Oregon Business,
*Respondents.*

9911-12261; A117813

108 P3d 1195

Kathryn H. Clarke argued the cause for appellant. With her on the opening brief was John E. Uffelman.

Michael T. Stone argued the cause for respondent Providence Health System of Oregon Corp., Lindsey H. Hughes argued the cause for respondent James L. Hedtke, M.D., and Janet M. Schroer argued the cause for respondents Ezra Azhar, M.D., and Aloha Family Practice Clinic. With them on the joint brief were Brisbee & Stockton LLC, Keating Jones Bildstein & Hughes PC, and Hoffman Hart & Wagner LLP.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Edmonds, Judge.

BREWER, C. J.

### BREWER, C. J.

Satyapriy Joshi died of a stroke after two doctors failed to diagnose his condition. Joshi's wife brought a wrongful death action against both doctors and the hospital and clinic where each practices. The trial court directed a verdict for defendants after plaintiff proffered expert opinion testimony that a timely diagnosis and proper treatment would have improved Joshi's chance of survival by approximately 30 percent but that Joshi probably would have died anyway. Plaintiff appeals, assigning error to the trial court's ruling that she failed to present sufficient evidence that defendants' conduct caused Joshi's death to submit the case to the jury. We affirm, because plaintiff did not present expert testimony that there was a reasonable medical probability that defendants' conduct caused Joshi's death. *See Chouinard v. Health Ventures*, 179 Or App 507, 512, 39 P3d 951 (2002) (when causation involves a complex medical question, evidence is insufficient to go to the jury without expert testimony that there is a reasonable medical probability of a causal connection).

■ We review the directed verdict for errors of law, considering the evidence in the light most favorable to plaintiff, the nonmoving party. *Checkley v. Boyd*, 170 Or App 721, 738, 14 P3d 81 (2000), *rev den*, 332 Or 239 (2001). On a Wednesday, six days before he died, Joshi suffered a stroke. An ambulance took Joshi to the hospital where Dr. Hedtke, the emergency room physician, treated him. Hedtke failed to diagnose Joshi's stroke. Instead, he wrote Joshi a prescription for Vicodin and released him. On Saturday, Joshi became disoriented, and his wife called Dr. Azhar, the family's physician, to report her husband's symptoms. Azhar also failed to correctly diagnose Joshi's condition. He attributed the disorientation to the Vicodin and instructed Joshi to replace it with Tylenol and to come to his office Monday morning. On Sunday, Joshi suffered another stroke. The hospital again treated him unsuccessfully, and he died two days later.

Joshi's wife, as his personal representative, brought a wrongful death action under ORS 30.020 against Azhar, Hedtke, and the clinic and hospital where each practices. The

trial court granted a directed verdict for defendants after plaintiff's expert witness was unable to state in an offer of proof that, if defendants had correctly diagnosed Joshi's first stroke and treated him for it, Joshi probably would have survived.[1] Instead, the expert explained that, had the doctors diagnosed the stroke, they would have had three treatment options available to prevent the second stroke that took Joshi's life. He opined that the first treatment option, tPA,[2] would have improved Joshi's chance of survival by 30 percent. He offered a similar opinion about the second treatment option, aspirin, based on a study that showed that taking aspirin decreases by 28 percent the chance of a second stroke. With regard to the third treatment option, heparin,[3] the expert opined that heparin would have improved Joshi's chance of survival, but he could not say by how much. The expert did not testify that the treatments could have been combined to cumulatively improve Joshi's chance of survival above 30 percent.

■      The sole issue on appeal is whether plaintiff's offer of proof included sufficient evidence of a cause-in-fact connection between defendants' negligence and Joshi's death to present a triable issue for the jury. Plaintiff argues that the evidence was sufficient because it demonstrated that defendants' negligence caused Joshi to lose a possibility of survival, and a reasonable juror could find that the lost possibility was a "substantial factor" in causing his death. According to plaintiff, conduct may be a substantial factor in causing death even if it is more probable than not that, but for a defendant's conduct, the death would have occurred anyway. Defendants respond that the element of cause-in-fact

---

[1] Defendants objected to the expert's testimony regarding causation; as a consequence, the expert stated his opinion in an offer of proof outside the presence of the jury. The trial court collapsed the questions of admissibility and sufficiency of the evidence, excluded the evidence, and directed a verdict for defendants after allowing plaintiff to make an offer of proof on the remaining elements of her claim. The parties have raised no issue regarding that procedure, and we do not discuss it further.

[2] Tissue plasminogen activator (tPA) is a thrombolytic agent—a "clot-busting" drug. The drug can dissolve blood clots, which cause most heart attacks and strokes.

[3] Heparin is an anticoagulant or "blood-thinning" drug. It helps to prevent blood clots from forming.

requires "but-for" causation and that the rule that a plaintiff in a medical malpractice case must prove cause-in-fact "to a reasonable medical probability" required plaintiff to demonstrate that it is more probable than not that, but for defendants' negligence, Joshi would have survived.

■ Because plaintiff brought her claim under the wrongful death statute, ORS 30.020, we first look to that statute for guidance in resolving the parties' dispute.[4] ORS 30.020(1) provides, in part:

> "When the death of a person is *caused* by the wrongful act or omission of another, the personal representative of the decedent * * * may maintain an action against the wrongdoer, if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission."

(Emphasis added.) To determine the meaning of "caused" in the statute, we consider the statute's text and context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We also consider "rules of construction of the statutory text that bear directly on how to read the text." *Id.* at 611. One such rule is to give a word its well-defined legal meaning. *Gaston v. Parsons*, 318 Or 247, 253, 864 P2d 1319 (1994).

■ In Oregon, "cause" has a well-defined legal meaning: it means cause-in-fact. *Sandford v. Chev. Div. Gen. Motors*, 292 Or 590, 605-06, 642 P2d 624 (1982). The Supreme Court has applied that meaning in interpreting the word in the wrongful death statute. *See Fergison v. Belmont Conv. Hospital*, 217 Or 453, 481-82, 343 P2d 243 (1959) (applying principles of cause-in-fact to wrongful death action); *Copenhaver Admt'x v. Tripp*, 187 Or 662, 681-82, 213 P2d 450 (1950) (same). "Cause-in-fact" also has a well-defined legal meaning: it generally requires evidence of a reasonable probability that, but for the defendant's negligence, the plaintiff

---

[4] Plaintiff was required to bring her claims under the statute because it is the only source of law authorizing recovery for damages arising from a death or injury to a decedent. "At common law there was no remedy by way of a civil action for the death of a human being, and a cause of action arising out of an injury to a person died with the person." *Cowgill, Adm'r v. Boock, Adm'r*, 189 Or 282, 288, 218 P2d 445 (1950).

would not have been harmed. *See, e.g., Horn v. National Hospital Association*, 169 Or 654, 679, 131 P2d 455 (1942) (holding that, to prove causation, the plaintiff was required to "show that competent action would have been substituted for negligent inaction, and that there was a reasonable probability that the subsequent ailments would have been less if the substitution had been made"). Plaintiff argues, however, that Oregon courts have more recently abandoned the "but-for" test for causation in favor of a more lenient "substantial factor" test.[5] As we now explain, that argument oversimplifies the law.

■ When employed as a standard for determining cause-in-fact, the phrase "substantial factor" generally does not eliminate the concept of "but-for" causation. Rather, the substantial factor standard is an alternate description of the cause-in-fact test and requires a showing of "but-for" causation in all but a few cases. *See Simpson v. Sisters of Charity of Providence*, 284 Or 547, 561, 588 P2d 4 (1978) (noting that, "in the great majority of cases" the two formulations "amount[ ] to the same thing" (internal quotation marks omitted)). In *Simpson*, the Supreme Court rejected the plaintiff's argument that the substantial factor standard would permit a jury to find that the defendant's conduct caused the plaintiff's injury, even though the jury determined that the injury would have occurred anyway. Instead, the court agreed with Prosser that,

"[e]xcept as indicated, no case has been found where the defendant's act could be called a substantial factor when the event would have occurred without it; nor will cases very often arise where it would not be such a factor when it was so indispensable a cause that without it the result

---

[5] Several opinions have used the phrases "substantial factor" and "substantial cause" when discussing proximate causation. *See, e.g., Brennen v. City of Eugene*, 285 Or 401, 413, 591 P2d 719 (1979); *Davis v. Pacific Diesel*, 41 Or App 597, 600, 598 P2d 1228 (1979), *rev den*, 288 Or 253 (1980). However, in *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 343 n 9, 83 P3d 322 (2004), the Supreme Court disavowed its previous use of "substantial factor" and explained that it is better understood as a test for cause-in-fact. Accordingly, plaintiff's reliance on *Brennan* and *Davis* for the proposition that defendants' negligence may be a substantial factor in causing Joshi's death without being a "but-for" cause does not help her.

> would not have followed. W. Prosser, *Law of Torts* 240, § 41 (4th ed 1971)."

*Id.* Thus, the court recognized in *Simpson* that, except in a limited range of cases, the substantial factor standard does not relieve a plaintiff of the burden of showing "but-for" causation. It follows that, unless the situation here falls into that limited range, plaintiff was required to demonstrate "but-for" causation.

The range of cases in which the substantial factor and "but-for" formulations diverge consists primarily of two types. In the first type, the acts of multiple tortfeasors combine to cause an indivisible injury, even though not all the acts were necessary to cause the injury. For example, where five people beat another person to death and any three beatings would have killed the victim, no single beating can be said to be a "but-for" cause of the death because the death would have occurred without it. W. Page Keeton, *Prosser and Keeton on Torts* 267 n 25 (5th ed 1984).[6] Yet, a plaintiff in such a case need show only that the combined tortious conduct was a "but-for" cause of her harm. *Id.* at 268-69. If that combined conduct was a "but-for" cause of the harm, then each act may be said to be a substantial factor in causing the harm. *Id.* That rule does not assist plaintiff in this case, however, because she does not assert that defendants' combined conduct was a "but-for" cause of Joshi's death.

In the second type of case, two causes concur to bring about a harmful result, and either one of them, operating alone, probably would have brought about the harm. *Id.* at 266-67. In that situation, both forces are substantial factors in causing the harm, although neither was a necessary cause. For example, if, when a decedent suffered a fatal stroke, a defendant had negligently administered a lethal dose of medication and either the stroke or the medication alone would

---

[6] We rely on *Prosser and Keeton on Torts* to describe the types of cases where "but-for" causation is not required because the Supreme Court has indicated that it agrees with Prosser and Keeton's view of substantial factor causation. *See Simpson,* 284 Or at 561 (citing the fourth edition of Prosser's treatise); *Oregon Steel Mills, Inc.,* 336 Or at 343 n 9 (citing the fifth edition of the treatise). We cite the fifth edition of *Prosser and Keeton on Torts* because it is more recent. However, the discussions of the substantial factor test in the fourth and fifth editions are not materially different.

have been fatal, the plaintiff would not have been required to show that the decedent would have survived in the absence of the defendant's negligence. However, because plaintiff does not contend that the conduct of defendants, operating in the absence of another causal force, probably would have brought about Joshi's death, that class of cases is also inapplicable here.[7]

Plaintiff remonstrates that several Oregon cases, particularly *McEwen v. Ortho Pharmaceutical*, 270 Or 375, 528 P2d 522 (1974), *Escobedo v. Ward*, 255 Or 85, 464 P2d 698 (1970), and *Purcell v. Asbestos Corp., Ltd.*, 153 Or App 415, 424, 959 P2d 89, *adh'd to as modified on recons*, 155 Or App 1, 963 P2d 729 (1998), *rev den*, 329 Or 438 (1999), have adopted the substantial factor formulation in derogation of the "but-for" standard to determine cause-in-fact in circumstances similar to those present here.

In *McEwen*, the plaintiff alleged that two different oral contraceptives manufactured by different defendants had caused blindness in her right eye. The plaintiff had used one defendant's oral contraceptive for several months and then stopped. Later, she began using the second defendant's product. After her vision deteriorated, the plaintiff brought a negligence action against both manufacturers for failing to warn her that their products had a tendency to cause vision damage. The first defendant asserted that, in the absence of evidence that the plaintiff's injuries were irreversible when she discontinued use of its product, the plaintiff had not shown that its conduct was a substantial factor in causing her injuries. The Supreme Court disagreed:

---

[7] Prosser and Keeton identify two additional situations where the substantial factor and "but-for" causation formulas do not coincide. One situation arises when a similar, but not identical, result would have followed without the defendant's act. *Prosser* at 267. For example, if A and B each sell a rope to C, who is bent on hanging himself, and C hangs himself with A's rope, A's act is a substantial factor in causing C's death, even though, but for A's conduct, C would probably have killed himself anyway using B's rope. *Id.* at 267 n 32. The other situation arises where "one defendant has made a clearly proved but quite insignificant contribution to the result, as where he throws a lighted match into a forest fire." *Id.* Plaintiff does not contend that either of those situations is applicable here.

"The respective liability of multiple defendants depends upon whether the negligence of each was a substantial factor in producing the complained of harm. If both [defendants] were negligent and their negligence combined to produce plaintiff's injuries, then the negligence of [one defendant] was concurrent with that of [the other defendant] and does not insulate [the first defendant] from liability. This is true although the negligent omissions of each defendant occurred at different times and without concerted action. Nor is it essential to [the first defendant's] liability that its negligence be sufficient to bring about plaintiff's harm by itself; it is enough that [the first defendant] substantially contributed to the injuries eventually suffered by Mrs. McEwen."

*McEwen*, 270 Or at 418 (citations omitted).

Plaintiff reads the quoted passage to mean that negligent conduct generally need not be a "but-for" cause to be a substantial factor in causing an injury. We do not share that view of the court's decision. Rather, the court merely held that, if it was a cumulative cause of a harm, negligent conduct may be a "but-for" cause of the harm even if the conduct was not, by itself, sufficient to cause the harm. That proposition is unremarkable because causation-in-fact "includes every one of the great number of events without which any happening would not have occurred." *Restatement (Second) of Torts* § 431 comment a (1974). Each of those events is considered to be a cause-in-fact of a harm, even though other events were also necessary antecedents of the harm. *Purcell* and *Escobado* mirror the pertinent facts and reasoning in *McEwen* and, likewise, do not support plaintiff's argument that she need not establish that defendants' negligence was a "but-for" cause of Joshi's death.

Plaintiff also cites section 432 of the *Restatement* to support her argument. That section states:

"(1)  Except as stated in Subsection (2), the actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent.

"(2)  If two forces are actively operating, one because of the actor's negligence, the other not because of any misconduct on his part, and each of itself is sufficient to bring about

harm to another, the actor's negligence may be found to be a substantial factor in bringing it about."

Subsection (2) does not aid plaintiff, because it describes one of the situations recognized by *Prosser and Keeton on Torts*—specifically, where two forces combine to cause a harm and either of them, operating alone, probably was sufficient to cause the harm. As discussed, that situation does not exist here because plaintiff did not offer evidence that the conduct of defendants, by itself, probably was sufficient to cause Joshi's death. Instead, the situation here falls under subsection (1) of section 432. Indeed, comment b to subsection (1) addresses the present problem:

> "The statement in this Subsection is most frequently, although not exclusively, applicable where the actor's tortious conduct consists in a failure to take some precautions which are required for the protection of another's person or land or chattels. In such case, if the same harm, both in character and extent, would have been sustained even had the actor taken the required precautions, his failure to do so is not even a perceptible factor in bringing it about and cannot be a substantial factor in producing it."

*Restatement* at § 432 comment b. Thus, the *Restatement* does not support plaintiff's argument that she offered sufficient evidence that defendants' conduct caused Joshi's death.

Plaintiff also argues that the evidence was sufficient to create a triable issue because it demonstrated the *possibility* that defendants' negligence caused Joshi's death. She contends that she was not required to present evidence that defendants' negligence probably caused Joshi's death. She relies on several Oregon decisions, including *Harris v. Kissling*, 80 Or App 5, 721 P2d 838 (1986), that have allowed recovery of damages for potential physical injuries the future occurrence of which was merely possible.

In *Harris*, we recognized a "lost opportunity" as a distinct form of harm recoverable in a medical malpractice case. The plaintiff in that case had Rh positive blood and gave birth to a child with Rh negative blood. The hospital had failed to detect that condition and history and did not innoculate the plaintiff to prevent Rh antibodies from forming in her blood. As a result of those omissions, the plaintiff was at

risk of having Rh problems in any future pregnancy. We concluded that the plaintiff's lost opportunity to have a healthy child was a compensable harm. We rejected the defendant's argument that the plaintiff had not established a cause-in-fact connection between the hospital's conduct and the plaintiff's harm. We reasoned that, even though future *physical* harm was only a possibility, putting the plaintiff in the position of having to choose between not having more children or having a potentially problematic pregnancy and a child with potentially serious health problems was, itself, a compensable harm. *Id.* at 10 ("The claim is for a lost opportunity, whether or not [plaintiff] take[s] advantage of it."). Thus, although the evidence did not show that, because of the hospital's negligence, it was more likely than not that the plaintiff would have a child who would suffer injuries, the evidence was sufficient to establish, to a reasonable medical probability, that the defendant's negligence caused her "harm"—that is, the harm of being forced to make a Hobson's choice.

Plaintiff also cites cases holding that a jury may consider the possibility of future medical problems in calculating damage awards, even if there is a less than 50 percent chance that the problems will occur. *See Feist v. Sears, Roebuck & Co.*, 267 Or 402, 412, 517 P2d 675 (1973); *Henderson v. Hercules, Inc.*, 57 Or App 791, 796-97, 646 P2d 658 (1982); *Pelcha v. United Amusement Co.*, 44 Or App 675, 606 P2d 1168, *rev den*, 289 Or 275 (1980). Those decisions recognized, as did *Harris*, that the risk of harm itself may, in certain circumstances, be compensable. Like *Harris*, those cases required proof of probability for causation but, for purposes of identifying compensable harm, recognized possibilities as well as probabilities. However, those decisions did not abrogate the rule that, in a medical malpractice case, the plaintiff must present evidence that there is a "reasonable medical probability" that a defendant's negligence caused the plaintiff's harm. *Horn*, 169 Or at 679; *Chouinard*, 179 Or App at 512.

As discussed, ORS 30.020(1) authorizes recovery only "[w]hen the *death* of a person is caused by the wrongful act or omission of another[.]" (Emphasis added.) Accordingly,

the asserted harm is Joshi's death, and the decisions on which plaintiff relies are not controlling here.

■ Plaintiff's final contention is that the "reasonable medical probability" standard describes the requisite level of confidence with which an expert must express his or her opinion, not the requisite level of proof for causation. Again, we disagree. Proof of cause-in-fact "must have the quality of reasonable probability, and a mere possibility that the alleged negligence of the defendant was the * * * cause of plaintiff's injuries is not sufficient." *Cleland v. Wilcox*, 273 Or 883, 887, 543 P2d 1032 (1975); *Sims v. Dixon*, 224 Or 45, 48, 355 P2d 478 (1960); *see also Henderson v. U. P. R. R. Co.*, 189 Or 145, 162, 219 P2d 170 (1950) ("Without competent medical testimony that the blow which the plaintiff received was the *probable cause* of the gangrene and resulting amputation, there could be no case sufficient to go to the jury on that question." (Emphasis added.)).

Plaintiff concedes that her expert did not state that Joshi probably would have lived had defendants not been negligent. In her brief, she states, "Dr. Jaush could not say that it was more probable than not that any of these treatments would have changed the outcome in this particular case and thus saved Mr. Joshi's life." Instead, her expert opined that there was, at most, a 30 percent possibility that the treatments would have saved Joshi's life. As discussed, the mere possibility that defendants' negligence caused Joshi's death is not enough. Plaintiff was required to show that there was a reasonable medical probability that Joshi's death would not have occurred in the absence of defendants' negligence. Accordingly, the trial court did not err in directing a verdict for defendants.

Affirmed.